IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD L. STEWARD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 08-1741 ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff, Richard L. Steward, seeks judicial review of a decision of defendant, Commissioner of Social Security ("the Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.[1] Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Plaintiff's motion for summary judgment seeking a remand of this action for further proceedings will be granted and the Commissioner's cross-motion for summary judgment will be denied.

---

[1]Title II of the Social Security Act provides for payment of insurance benefits to disabled individuals who have contributed to the Social Security Program through past employment. Plaintiff's earnings record shows that he acquired sufficient quarters of coverage for purposes of eligibility for DIB to remain insured through December 31, 2009. (R. 16).

1

## II. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 16, 2004, alleging disability since January 1, 2004.[2] (R. 63-66). Following the denial of his DIB application, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 49-50). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing, which was held on August 3, 2006.[3] (R. 632-73).

On November 7, 2006, the ALJ issued a decision denying Plaintiff's application for DIB based on his conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national

---

[2]In order to establish a disability under the Social Security Act, a claimant must demonstrate an inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 423(d)(1). A claimant is considered unable to engage in any substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A).

[3]Although Plaintiff alleged an onset date of disability of January 1, 2004 in his application for DIB, the ALJ noted during the hearing that the evidence showed he did not stop working until July 15, 2004. As a result, counsel indicated that Plaintiff's onset date of disability would be amended to commence on July 15, 2004. (R. 639).

2

economy.[4] (R. 16-25). Plaintiff requested review of the ALJ's decision. (R. 11-12). However, the request was denied by the Appeals Council on December 11, 2008. (R. 5-8). This appeal followed.[5]

### III. BACKGROUND

Plaintiff's date of birth is August 6, 1954, and he is a high school graduate. (R. 636, 639). At the time of the hearing before the ALJ in August 2006, Plaintiff had recently completed one year of a two-year program at Penn State's New Kensington campus to obtain an associate's degree in information technology services through the Veterans Administration ("VA").[6] (R. 63, 636-38).

In the past, Plaintiff has been employed as a laborer (weed sprayer and warehouseman), a retail sales clerk, a pharmacy clerk

---

[4]The Social Security Regulations define RFC as the most a disability claimant can still do despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a).

[5]The Court has jurisdiction of this appeal under 42 U.S.C. § 405(g), which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the individual resides.

[6]Regarding his pursuit of an associate's degree in information technology services, Plaintiff testified that he had earned 26 credits toward the degree; that his grade point average for the first year was 2.88; that his school day involved three, back-to-back, one-hour classes during which he was permitted to stand as needed and elevate his right leg for pain relief; and that he would be starting his second full year of the program in the fall. (R. 637, 662-63, 667).

3

and a telemarketer. (R. 122). Plaintiff left his last job as a telemarketer on July 15, 2004, because of right knee pain and the employer's unwillingness to accommodate his need to stand periodically throughout the day to obtain relief from the pain. (R. 641-42). During the hearing before the ALJ, Plaintiff identified the "biggest" problems limiting his ability to work as "[r]ight knee, depression, the carpal tunnel, the diabetes, the lower back." (R. 640).

With respect to Plaintiff's right knee pain, in April 1973, two weeks before he was to graduate from basic training in the Marine Corps, Plaintiff injured his right knee during a training exercise and was discharged from military service. (R. 638). An x-ray of Plaintiff's right knee on May 12, 2004 revealed mild arthritis with small joint effusion, and an x-ray of his right knee on March 14, 2005 showed minimal degenerative changes and moderate ossification of the quadriceps tendon insertion and patellar ligament insertion. (R. 333, 539). Due to continued right knee pain, on August 8, 2005, Plaintiff underwent "right knee arthroscopy, partial medial meniscectomy" for a right medial meniscus tear.[7] (R. 301). During a follow-up visit on October 11, 2005, the orthopedic surgeon noted that the surgery had resolved the mechanical problems in Plaintiff's right knee

---

[7] At the hearing, Plaintiff testified that his right knee pain was "somewhat better" since the surgery. (R. 644).

4

(locking and catching), but he continued to suffer from moderate pain. (R. 298). During another follow-up visit on March 9, 2006, Plaintiff's physical examination showed good range of motion in his right knee, no effusion, no erythema, no warmth, but a little bit of pain on the medial side. The orthopedic surgeon noted that Plaintiff may need a total knee replacement in the future due to the progression of arthritis and his weight (350 pounds). (R. 414). At the hearing on August 3, 2006, Plaintiff, who presented with a cane, testified that he needed the cane to ambulate, and that the cane had been prescribed by Dr. Reilly, his primary care physician, and his VA medical providers following the right knee surgery in August 2005. (R. 654, 659).

As to depression, Plaintiff testified that he began experiencing symptoms of depression in 1976 or 1977; however, he did not receive any treatment for this condition until early 2004, when Paxil, an anti-depressant medication, was prescribed for him. Although counseling also was recommended to treat his depression, Plaintiff declined to go to counseling because he "[t]hought it was a waste of time." (R. 645-46, 664).

Regarding carpal tunnel syndrome, Plaintiff, who is right-handed, began to experience tingling and numbness in his left fingers and pain from his left shoulder to the fingers of his left hand in 2004. (R. 646). An evaluation of Plaintiff's left

5

hand numbness on April 28, 2004 revealed left carpal tunnel syndrome of moderate severity. (R. 540-41). At the time of the hearing, Plaintiff wore a brace on his left wrist to alleviate the symptoms.[8] (R. 647).

Turning to diabetes, Plaintiff was diagnosed with this condition in 1988. For years, Plaintiff's diabetes was treated with oral medication.[9] However, at the time of the hearing, Plaintiff's diabetes was controlled with insulin injections.[10] (R. 649-50).

Finally, regarding low back pain, Plaintiff testified that he injured his back in 2002; that he had not received treatment for this condition since July or August of 2002; and that he

---

[8] A report of nerve conduction studies performed on October 24, 2006, indicates that Plaintiff suffers from "bilateral carpal tunnel syndrome, worse on the left." (R. 621-24). This report was not in the administrative record at the time of the ALJ's decision. However, the report was submitted to the Appeals Council in support of Plaintiff's request for review of the ALJ's decision. (R. 616).

[9] Plaintiff testified that his diabetes was not under control in January 2004, the onset date of disability alleged in his DIB application, because the oral medication was not "really working that well." Also, Plaintiff admitted that he was not taking care of himself at the time. (R. 649).

[10] The nerve conduction studies performed on October 24, 2006 revealed moderate polyneuropathy in Plaintiff's upper extremities as a result of his diabetes. (R. 623). Again, the report of these studies was submitted to the Appeals Council in connection with Plaintiff's request for review of the ALJ's decision. The report was not considered by the ALJ in rendering his adverse decision in this case.

controls his occasional low back pain with over the counter Ibuprofen. (R. 648).

The evidence in Plaintiff's administrative record that is relevant to this appeal includes the following:[11] (1) a Disability Report completed by Plaintiff on 9/8/04 (R. 112-18); (2) a Daily Activities Questionnaire completed by Plaintiff on 9/12/04 (R. 130-36); (3) records of Dr. Paul Reilly, Plaintiff's primary care physician, for the period 4/23/03 to 5/19/05 (R. 204-20, 593-615); (4) VA medical records for the period 2/12/04 to 8/4/06 (R. 221-25, 256-311, 312-495); (5) a report by Dr. Hadi Firoz, a consultative examiner, dated 10/28/04 (R. 226-39); (6) a Psychiatric Review Technique Form completed by a State agency psychological consultant on 12/9/04 (R. 240-52); (7) physical therapy records of Alle-Kiski Medical Center for 2004 (R. 525-33, 534-92); (8) the report of nerve conduction studies performed on Plaintiff's upper extremities on 10/24/06 (submitted to the Appeals Council with Plaintiff's request for review) (R. 621-24); and (9) records of Kathryn Ryan, D.O, a treating physician, for

---

[11]Plaintiff filed an earlier application for DIB in August 2000, alleging an onset date of disability of July 26, 2000, due to a heart attack and "weak heart." (R. 60-62, 73). Although listed as a disabling condition in the Disability Report completed by Plaintiff on September 8, 2004 (R. 112), there is no evidence that Plaintiff's heart condition significantly limited his ability to work during the period relevant to his present application for DIB. Thus, the medical records from 2000 relating to Plaintiff's heart condition have limited significance in this appeal.

7

the period 2/2/06 to 11/9/06 (submitted to the Appeals Council with Plaintiff's request for review) (R. 625-32).

**IV. ALJ'S DECISION**

When presented with a claim for disability benefits under the Social Security Act, an ALJ must follow a sequential evaluation process. See 20 C.F.R. § 404.1520(a)(4). The process was described by the United States Supreme Court in Sullivan v. Zebley, 493 U.S. 521 (1990), as follows:

\* \* \*

> Pursuant to his statutory authority to implement the SSI Program, (footnote omitted) the Secretary has promulgated regulations creating a five-step test to determine whether an *adult* claimant is disabled. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). (footnote omitted). The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. See 20 C.F.R. §§ 416.920(a) through (c)(1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A)(1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f).

\* \* \*

493 U.S. at 525-26.

The claimant bears the burden of establishing steps one through four of the sequential evaluation process. At step five, the burden shifts to the Commissioner to consider "vocational factors" (the claimant's age, education and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy in light of his or her RFC. See Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir.2004).

With respect to the ALJ's application of the five-step sequential evaluation process in the present case, steps one and two were resolved in Plaintiff's favor: that is, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability, and the medical evidence established that Plaintiff suffers from the following severe impairments: degenerative joint disease with arthritis involving the right knee, diabetes, carpal tunnel syndrome involving the left wrist, low back pain, coronary artery disease and morbid obesity.[12] (R. 18). Turning to step three, the ALJ

---

[12]Although Plaintiff testified at the hearing that depression contributed to his inability to work, the ALJ noted in his decision that Plaintiff's treatment for depression was limited to medication; that Plaintiff did not participate in any mental health counseling; that depression had not resulted in more than minimal restrictions on Plaintiff's ability to carry out activities of daily living, relate effectively to others or concentrate and persist at job tasks; that Plaintiff had not experienced repeated episodes of decompensation, each of extended duration; that Plaintiff denied anxiety, depression or a mood

found that Plaintiff's impairments were not sufficiently severe to meet or equal the requirements of any impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.[13] (R. 19-20). Before continuing on to step four, the ALJ assessed Plaintiff's RFC, concluding that Plaintiff retained the RFC to perform light work "which would allow him to sit or stand every 45 to 60 minutes, and would involve lifting with only the dominant right hand, using the left hand solely as a guide."[14] (R. 20). As to step

---

disorder when he was seen at the VA in March 2005; that Plaintiff denied any treatment for depression in April 2005, stating that he was able to work out his bad feelings on his own; and that Plaintiff's Global Assessment of Functioning score was 65 in April 2005, indicating some mild symptoms or some difficulty in social or occupational functioning, but generally functioning pretty well. (R. 19). As a result, the ALJ concluded that Plaintiff's depression was not a severe impairment. Plaintiff has not challenged the ALJ's step two determination.

[13] If a claimant's impairment meets the requirements of an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1, or its equivalent, he or she is *per se* disabled and automatically eligible for benefits with no further analysis. Burnett v. Comm'r of Social Security, 220 F.3d 112, 119 (3d Cir.2000). In the present case, the ALJ considered Plaintiff's right knee impairment and carpal tunnel syndrome of the left wrist under Listing 1.02 relating to major dysfunction of a joint, his diabetic disorder under Listing 9.08 relating to diabetes mellitus and his complaint of low back pain under Listing 1.04 relating to disorders of the spine, and concluded that Plaintiff did not meet any of these listed impairments. Plaintiff has not challenged the ALJ's step three determination.

[14] Under the Social Security Regulations, "light work" "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

10

four, the ALJ found that Plaintiff is unable to perform any of his past relevant work. (R. 23). Finally, regarding step five, based on the testimony of the VE, the ALJ found that considering Plaintiff's age, education, past work experience and RFC, there were a significant number of jobs in the national economy at the light exertion level which Plaintiff could perform, including the jobs of a cashier (200,000 jobs nationally with a sit/stand option), an information clerk (20,000 jobs nationally) and an order clerk (50,000 jobs nationally). (R. 23-24, 670).

**V. STANDARD OF REVIEW**

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court would have decided the case differently, it must accord deference to the Commissioner and affirm the findings and decision if supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986).

11

## VI. DISCUSSION

**A**

Initially, Plaintiff asserts that this case should be remanded for consideration of a report prepared by Dr. Ronald Zimmerman on October 24, 2006, in connection with nerve conduction studies performed on Plaintiff's upper extremities. In the report, Dr. Zimmerman stated that the electrical findings showed a "moderate polyneuropathy" in Plaintiff's upper extremities due to diabetes, as well as "a superimposed bilateral carpal tunnel syndrome, worse on the left." Dr. Zimmerman opined that decompression of the median nerves at Plaintiff's wrists should be considered due to the severity of the electrical findings.[15] In the alternative, Dr. Zimmerman recommended symptomatic treatment, including the use of wrist splints as needed. (R. 621-24).

When a disability claimant seeks a remand based on evidence presented to the district court that was not before the ALJ when his or her adverse decision became the final decision of the Commissioner,[16] the remand is governed by Sentence Six of Section

---

[15]With respect to decompression, Dr. Zimmerman noted, however, that the results could not be guaranteed due to Plaintiff's underlying diabetic polyneuropathy. (R. 623).

[16]Despite Plaintiff's submission of Dr. Zimmerman's report to the Appeals Council in support of his request for review, the ALJ's decision is the final decision of the Commissioner in this case because the Appeals Council denied the request for review.

12

405(g) of the Social Security Act, which provides in relevant part:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is **new** evidence which is **material** and that there is **good cause** for the failure to incorporate such evidence into the record in a prior proceeding; ... (emphasis added).

Thus, this case may be remanded to the Commissioner for consideration of Dr. Zimmerman's report only if the report constitutes "new" and "material" evidence *and* Plaintiff establishes "good cause" for failing to present it to the ALJ. See Matthews v. Apfel, 239 F.3d 589, 592-93 (3d Cir.2001).

The first requirement for a Sentence Six remand, *i.e.*, that the evidence be "new," is met in this case. When the ALJ issued his decision on Plaintiff's application for DIB on November 7, 2006, the administrative record did not contain any evidence of diabetic polyneuropathy in Plaintiff's upper extremities or any evidence of carpal tunnel syndrome in Plaintiff's right wrist. In fact, the ALJ specifically stated in his decision that "there is no indication that [Plaintiff's] diabetes has resulted in ... peripheral neuropathy," and that Plaintiff's carpal tunnel syndrome "has been treated conservatively and does not affect his right dominant hand." (R. 21-22).

---

See Sims v. Apfel, 530 U.S. 103, 106-07 (2000). Thus, the Court is precluded from considering Dr. Zimmerman's report in ruling on the parties' cross-motions for summary judgment.

13

The second requirement for a Sentence Six remand, *i.e.*, that the evidence be "material," also is met in this case. The ALJ's denial of Plaintiff's application for DIB required a finding that Plaintiff retained the RFC to perform light work despite his multiple impairments which, as noted in footnote 14, requires the ability to lift 20 pounds at a time. Diabetic polyneuropathy and carpal tunnel syndrome in Plaintiff's right wrist may preclude Plaintiff from meeting the lifting requirements for light work with his dominant right hand,[17] and, as noted by the ALJ and Plaintiff's counsel during the hearing (R. 639), if Plaintiff does not retain the RFC to perform a significant range of light work, the Medical-Vocational Guidelines in the Social Security Regulations compel a finding that Plaintiff is disabled based on his age (closely approaching advanced age), education (high school graduate or more - not providing for direct entry into skilled work) and previous work experience (skilled or semi-skilled - skills not transferable).[18] 20 C.F.R., Pt. 404, Subpt.

---

[17] As noted previously, due to the carpal tunnel syndrome in Plaintiff's left wrist, the ALJ found that Plaintiff's RFC was limited to light work which "would allow him to lift with his dominant right hand and use his left hand solely as a guide." (R. 20). Thus, Plaintiff's ability to lift 20 pounds with his right hand is critical to the determination that he is not disabled.

[18] In this connection, the Court notes that Plaintiff's hearing testimony regarding his lifting ability did not support the ALJ's determination that he retained the RFC to perform light work. Specifically, Plaintiff testified: "Probably my max is

P, App. 2, Rule 201.14. Thus, Dr. Zimmerman's report of the nerve conduction studies performed on Plaintiff's upper extremities on October 24, 2006 constitutes "material" evidence.

Despite the fact that Dr. Zimmerman's report constitutes "new" and "material" evidence, the Court is constrained to conclude that Plaintiff has failed to meet his burden for a Sentence Six remand for further consideration; that is, Plaintiff has failed to establish "good cause" for not incorporating Dr. Zimmerman's report in the record before the ALJ. Plaintiff emphasizes that the nerve conduction studies were not performed by Dr. Zimmerman until after the hearing before the ALJ on August 3, 2006. However, he fails to address the fact that the ALJ kept the record open following the hearing for receipt of additional evidence (which Plaintiff submitted) and Dr. Zimmerman's report of the nerve conduction studies was completed several weeks before the ALJ issued his decision. Moreover, Plaintiff did not submit Dr. Zimmerman's report in support of his application for DIB until March 30, 2007, when the report was submitted to the Appeals Council in support of the request for review which had been filed on November 8, 2006. Under the circumstances, the Court concludes that this case may not be remanded for

---

probably 10, 15 pounds, and that's with the right hand. I don't even attempt with the left." (R. 651).

15

consideration of Dr. Zimmerman's report under Sentence Six of Section 405(g) of the Social Security Act.

**B**

The determination that Plaintiff has failed to meet his burden for a Sentence Six remand does not end the Court's inquiry. Plaintiff also asserts that the case should be remanded based on the ALJ's failure to address the evidence concerning his need for a cane to ambulate. After consideration, the Court agrees.

The VA medical records in Plaintiff's administrative file indicate that a cane was prescribed for Plaintiff on August 24, 2005, several weeks after the arthroscopic surgery on his right knee, and Plaintiff appeared at the hearing with a cane, testifying that he uses the cane everyday and cannot walk without it. (R. 274-75, 659). This evidence is relevant with respect to the ALJ's assessment of Plaintiff's RFC which, again, is critical because Plaintiff is disabled under the Medical-Vocational Guidelines in the Social Security Regulations if he does not retain the RFC to perform light work as a result of his physical impairments. Despite its significance, the ALJ totally failed to discuss this evidence in his decision. In so doing, the ALJ erred necessitating a remand. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981)("... we need from the ALJ not only an expression of the evidence s/he considered which supports the

result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

In sum, the ALJ was not bound to accept the evidence concerning Plaintiff's need for a cane to walk. However, the ALJ was required to address the evidence because an inability to walk without a cane would place additional, significant limitations on Plaintiff for purposes of assessing his RFC. Accordingly, on remand, the ALJ is directed to address the evidence concerning Plaintiff's use of a cane.

C

An additional error by the ALJ needs to be addressed. The only medical source statement regarding Plaintiff's ability to perform work-related physical activities in the administrative record was completed by Dr. Firoz, a consultative examiner, on October 28, 2004, and the opinion rendered by Dr. Firoz in that statement does not support a finding that Plaintiff can work on a regular and continuing basis, *i.e.*, 8 hours a day, 5 days a week or an equivalent schedule. See Social Security Ruling 96-8p.[19] Specifically, Dr. Firoz opined that in light of Plaintiff's

---

[19]Social Security Rulings are agency rulings published "under the authority of the Commissioner of Social Security" and "are binding on all components of the Social Security Administration." See Sykes v. Apfel, 228 F.3d 259, 271 (3d Cir.2000).

17

physical impairments, his ability to stand and walk in an 8-hour work day is limited to 1 to 2 hours and his ability to sit in an 8-hour workday is limited to 4 hours. Thus, at most, according to Dr. Firoz, Plaintiff could stand, walk and/or sit 6 hours out of an 8-hour workday which does not satisfy the definition of work on a regular and continuing basis for purposes of disability benefits.

The ALJ acknowledged the conflict between Dr. Firoz's opinion regarding Plaintiff's ability to stand, walk and sit in an 8-hour workday and his denial of Plaintiff's application for DIB, and he explained his reasons for rejecting Dr. Firoz's opinion. (R. 22-23). However, the ALJ rejected Dr. Firoz's opinion in the absence of any contradictory medical evidence concerning Plaintiff's ability to stand, walk and sit in an 8-hour workday which is impermissible. See Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir.2000 (ALJ may not substitute his opinion for medical opinion of experts). As a result, on remand, the Commissioner also is directed to obtain another medical source statement concerning Plaintiff's ability to perform work-related physical activities on a regular and continuing basis, preferably from a treating source such as Dr. Reilly, and, if necessary, to obtain additional VE testimony concerning the existence of a

18

significant number of jobs in the national economy which Plaintiff can perform despite his various physical impairments.

*William L. Standish*
William L. Standish
United States District Judge

Date: June **13**, 2009